UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MA DEL CARMEN PALOMINOS GUILLEN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MARTIN O'MALLEY, COMMISSIONER OF SOCIAL SECURITY,[1]<br><br>　　　　Defendant. | Case No. 1:23-cv-00014-HBK<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND AFFIRMING THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY[2]<br><br>(Doc. Nos. 13, 16) |

　　　　Ma Del Carmen Palominos Guillen ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income and disability insurance benefits under the Social Security Act. (Doc. No. 1). The matter is currently before the undersigned on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 13, 16-17). For the reasons set forth more fully below, the Court denies Plaintiff's motion for summary judgment, grants Defendant's

---

[1] This action was originally filed against Kilolo Kijakazi in his capacity as the Commissioner of Social Security. (*See* Doc. No. 1). The Court has substituted Martin O'Malley, who has since been appointed the Acting Commissioner of Social Security, as the defendant in this suit. *See* Fed. R. Civ. P. 25(d).

[2] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C. §636(c)(1). (Doc. No. 9).

cross-motion for summary judgment, and affirms the Commissioner's decision.

## I. JURISDICTION

Plaintiff protectively filed for supplemental security income on November 2, 2018 and for disability insurance benefits on August 2, 2018, alleging a disability onset date of October 31, 2017. (AR 292-98, 301-10). Benefits were denied initially (AR 59-86, 127-32) and upon reconsideration (AR 87-122, 135-40). Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on September 10, 2021. (AR 42-58). Plaintiff testified at the hearing with a translator, and was represented by counsel. (*Id*.). The ALJ denied benefits (AR 20-41) and the Appeals Council denied review (AR 6-13). The matter is before the Court under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## II. BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 66 years old at the time of the hearing. (AR 46). She completed first grade in Mexico. (AR 47-48). She lives with her two adult disabled children. (AR 46). She has work history as a housekeeper and a fruit cutter. (AR 48-49, 54). Plaintiff testified that she left her last job because she hurt her knee. (AR 50). She reported that she can only stand for one hour before her feet start to feel numb and she has to sit down; she can lift no more than 10 pounds; and she elevates her leg for 20 minutes 3 times per day. (AR 51-52).

## III. STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is harmless.  *Id*.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV.     SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

////

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also

consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V.   ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 31, 2017, the alleged onset date, except for the first quarter of 2020. (AR 29).  At step two, the ALJ found that Plaintiff has the following severe impairments: left knee derangement and obesity. (AR 29).  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 30).  The ALJ then found that Plaintiff has the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb ramps or stairs and never climb ladders, ropes, or scaffolds.  She can occasionally kneel, crouch, or crawl. She must avoid frequent exposure to extreme cold and excessive vibration.

(AR 30).  At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a housekeeper. (AR 34).  On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from October 31, 2017, through the date of the decision. (AR 34).

////

////

////

**VI.   ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act and disability insurance benefits under Title II of the Social Security Act.  (Doc. No. 1).  Plaintiff raises the following issue for this Court's review: whether the RFC was supported by substantial evidence and free from legal error in light of the ALJ's consideration of the medical opinion evidence. (Doc. No. 13 at 15-21).

**VII.   DISCUSSION**

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a); 20 C.F .R. § 416.945(a). The RFC assessment is an administrative finding based on all relevant evidence in the record, not just medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).  In determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are credible and supported by substantial evidence in the record.  (*Id.*) (RFC determination will be affirmed if supported by substantial evidence). However, an ALJ's RFC findings need only be consistent with relevant assessed limitations and not identical to them. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010). Ultimately, a claimant's RFC is a matter for the ALJ to determine. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ ... to determine residual functional capacity.").

Plaintiff argues the ALJ erred in assessing the RFC because he improperly considered the medical opinions of Dale H. Van Kirk, M.D., Jerry R. Livesay, Ph.D., and Ekram Michiel, M.D. (Doc. No. 13 at 15-21).  For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c.  The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical

opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability and consistency are explained in the regulations:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The Ninth Circuit has additionally held that the new regulatory framework displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion. *Woods v. Kijakazi*, 32

F.4th 785, 787 (9th Cir. 2022). Nonetheless, in rejecting an examining or treating doctor's opinion as unsupported or inconsistent, an ALJ must still provide an explanation supported by substantial evidence. *Id.* at 792. This means that the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Id*. (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

**1. Dale H. Van Kirk, M.D.**

In March 2019, Dr. Van Kirk completed a consultative orthopedic examination of Plaintiff and opined that she was limited to light exertion, no exposure to an extremely cold and/or damp environment, and occasional postural activities. (AR 673-74). In March 2021, Dr. Van Kirk completed an additional consultative examination of Plaintiff, and opined again that she is limited to light exertion; can never climb ladders or scaffolds, crouch, or crawl; can never be exposed to extreme cold or extreme heat; can occasionally be exposed to humidity and wetness; and can frequently be exposed to pulmonary irritants and vibrations. (AR 693-98). The ALJ found Dr. Van Kirk's limitation to light exertion was persuasive because it is supported by his own findings of normal strength and range of motion despite "some abnormalities on examination," and other evidence in the record observing normal gate, some response to conservative treatment, and normal strength. (AR 33). However, the ALJ found Dr. Van Kirk's limitations on exposure to damp environments and pulmonary irritants, and his opined limitation to never crouching and crawling, were unpersuasive for several reasons. (*Id*.).

First, the ALJ specifically noted that the Dr. Van Kirk's did not provide sufficient support for these specific limitations; and second, the ALJ noted the "rest of the record" did not support a limitation in exposure to damp environments, and the opined limitation on crouching and crawling is "inconsistent with evidence of full range of motion with extant but not extreme pain." (AR 33). Plaintiff generally argues that the ALJ's analysis was insufficient because he "relied upon a cherry-picked analysis of the consistency and supportability of the opinion to support his discrediting of these opinions at issue." (Doc. No. 13 at 16-17). However, the Court notes that Plaintiff does not identify or challenge the actual specific reasons given by the ALJ to support

finding the limitations assessed by Dr. Van Kirk were unpersuasive under the new regulations. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (court may decline to consider issues not raised with specificity in plaintiff's opening brief); *see also Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).

For instance, as to supportability, under the new regulations "the more relevant the objective medical evidence and supporting explanations *presented by a medical source* are to support" the medical opinion, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(1); 416.920c(c)(1) (emphasis added). Here, Plaintiff fails to cite any evidence in Dr. Van Kirk's own opinion or examination notes that would support a limitation on exposure to damp environments or pulmonary irritants, or a limitation to never crouching and crawling. The Court's review of the record indicates Plaintiff reported to Dr. Van Kirk that cold weather "definitely enhances" the pain in her knee. (AR 670). However, as noted by Defendant, Plaintiff's subjective report is not "objective medical evidence and supporting explanation" presented *by* Dr. Van Kirk in support of a limitation, as required under the regulations (Doc. No. 16 at 9); and the ALJ relied on clear, convincing, and unchallenged reasons to discount Plaintiff's subjective claims (AR 31-32). Based on the foregoing, and regardless of any evidence in Dr. Van Kirk's examination notes that may be considered more favorable to Plaintiff, substantial evidence supports the ALJ's unchallenged finding that Dr. Van Kirk did not provide support for the degree of limitations on postural activities or non-exertional limitations set forth in his opinions. (AR 33); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

To the extent Plaintiff argues the ALJ erred in considering the consistency factor under the new regulations because the ALJ relied on "cherry picked" evidence, her argument is similarly unavailing. In support of this argument, Plaintiff cites treatment records from the longitudinal record noting left knee pain with flexion, tenderness to palpation, 2+ joint effusion, and limited range of motion; diagnosis of a bucket handle tear of the medial meniscus left knee with referral to orthopedic surgeon; diagnosis of internal derangement with degenerative arthritis;

and a notation by the orthopedic surgeon that Plaintiff may require arthroscopic surgery in the future but she should start a course of anti-inflammatory medications prior to considering surgical intervention. (Doc. No. 13 at 16-17 (citing AR 544-46, 648-50, 666-67)). Even under the new regulations, the ALJ may not "cherry-pick" evidence in discounting a medical opinion. *See Timothy P. v. Comm'r Soc. Sec. Admin.*, 2022 WL 2116099, at *9 (D. Or. June 13, 2022) ("Although *Woods* made it clear that the hierarchy among physicians' opinions no longer applies in this Circuit, the court did not address whether the new regulations upend the entire body of caselaw relating to medical evidence… It remains true that the ALJs may not cherry-pick evidence in discounting a medical opinion."). However, a review of the ALJ's decision indicates that that she did review the medical evidence as part of the summary of medical evidence, including imaging of Plaintiff's left knee that "revealed tears, grade 4B cartilage loss, bursitis, and large knee joint effusion"; and observations of painful knee movement, limited squatting, and crepitation. (AR 31-32 (citing AR 475, 538, 650, 663, 667, 672, 701)). Moreover, the ALJ specifically cited evidence of full range of motion without extreme pain in the longitudinal record as inconsistent with Dr. Van Kirk's limitation to no crouching or crawling, as well as clinical findings from the record that arguably do not support the degree of postural limitation assessed by Dr. Van Kirk, including normal gait, full range of motion and strength 5/5, and no limitation in flexion, extension, abduction, adduction, or rotation. (AR 32-33 (citing AR 554, 672-73, 700-02, 743, 753, 766)). Finally, the Court is unable to discern, nor does Plaintiff cite, any medical evidence in the overall record to support limitations on dampness or pulmonary irritants. Thus, when viewing the medical record as a whole, it was reasonable for the ALJ to conclude that the afore-mentioned postural and non-exertional limitations assessed in Dr. Van Kirk's opinion were not consistent with the longitudinal treatment record. *See Burch v*, 400 F.3d 676, 679.

After viewing the ALJ's reasoning in light of the record as a whole, the Court concludes that the ALJ's finding that a portion of Dr. Van Kirk's opinion was unpersuasive was supported by substantial evidence after proper consideration of the supportability and consistency factors.

////

////

### 2. Jerry R. Livesay, Ph.D.

In April 2019, Dr. Livesay completed a mental evaluation of Plaintiff and opined that her ability to perform simple and repetitive tasks and accept instructions from supervisors was unimpaired; she was mildly impaired in her ability to perform detailed and complex tasks, interact with coworkers and the public, and perform work activities on a consistent basis without special or additional instruction; and she was moderately impaired in her ability to maintain regular attendance and complete a normal workday/workweek without interruptions from a psychiatric condition, and deal with usual stress encountered in the workplace. (AR 683). The ALJ found the opinion was unpersuasive. (AR 33). Specifically, the ALJ found Plaintiff "herself told [Dr. Livesay] that she stopped working due to physical rather than mental symptoms. Additionally, mental status examinations were generally unremarkable. The record did not reveal that the claimant had difficulty with regular attendance from a mental standpoint, nor did the examiner provide support for such a limitation. The inconsistencies and unsupported statements render [Dr. Livesay's] opinion unpersuasive." (AR 33).

Plaintiff argues that the ALJ "offers no explanation as to why he ordered a consultative examination from a qualified examination source as directed by governing regulations and then proceeded to discredit the same examination findings based on Plaintiff's informal self-assessment." (Doc. No. 13 at 19-20). However, Plaintiff does not cite to, nor is the Court aware of, any legal authority that requires an ALJ to justify "discrediting" a consultative examining opinion aside from proper consideration under the new regulations. *Cf. Woods*, 32 F.4th at 792 (in rejecting an examining or treating doctor's opinion as unsupported or inconsistent under the new regulations, an ALJ must provide an explanation supported by substantial evidence). Moreover, as above, the Court may decline to consider this issue entirely because Plaintiff fails to identify or challenge most of the reasons given by the ALJ for finding Dr. Livesay's opinion unpersuasive in her opening brief. *See Carmickle*, 533 F.3d at 1161 n.2. Nonetheless, as to supportability, the ALJ found that Dr. Livesay did not provide support for the assessed limitation on Plaintiff's ability to maintain regular attendance; and as to consistency, the ALJ noted that mental status examinations in the record were "generally unremarkable" and "did not reveal that

11

[Plaintiff] had difficulty with regular attendance from a mental standpoint."[3] (AR 29-30, 33, 680-82, 686-87, 743, 753, 766). Thus, the Court concludes that the ALJ's finding that Dr. Livesay's opinion was unpersuasive is supported by substantial evidence after proper consideration of the supportability and consistency factors.

### 3. Ekram Michiel, M.D.

In January 2021, Dr. Michiel completed a psychiatric evaluation of Plaintiff and opined that Plaintiff is able to maintain attention and concentration to carry out simple job instructions; she is able to relate and interact with coworkers, supervisors, and the general public while in the routine setting of performing simple job instructions; and she is unable to maintain attention and concentration to carry out an extensive variety of technical and/or complex instructions. (AR 688). The ALJ found the opinion was unpersuasive because Dr. Michiel failed to provide support for the opined limitation "other than listing a diagnosis of adjustment disorder. Additionally, [Plaintiff's] ability to interpret a proverb and intact long-term memory undermine the opinion that she is moderately to markedly limited in her ability to make judgments on complex work-related decisions." (AR 34). Plaintiff argues the ALJ "proceeds to play[s] doctor" and it is "improper for the ALJ to determine, contrary to the findings of Dr. Michiel, that the diagnosis of adjustment disorder is not sufficient to support the assessed limitations." (Doc. No. 13 at 20). This argument is misplaced. As noted above, under the new regulations "the more relevant the objective medical evidence and supporting explanations *presented by a medical source* are to support" the medical

---

[3] The ALJ also noted that Plaintiff told Dr. Livesay she stopped working due to physical rather than mental symptoms, and in considering Dr. Michiel's opinion the ALJ similarly noted that "other evidence of record" shows Plaintiff stopped work due to issues of lack of work rather than mental issues. (AR 33-34). Plaintiff briefly argues that the ALJ "rejected" the mental health opinions "based on the apparent assumption that Plaintiff is better qualified to assess her own mental abilities." (Doc. No. 13 at 19-20). However, a plain reading of the ALJ's decision does not indicate that he was relying on Plaintiff's assessment of her own mental health; rather, the factors for evaluating medical opinion evidence under the new regulations include "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5). It was reasonable for the ALJ to consider Plaintiff's own report that she stopped working for physical rather than mental symptoms in evaluating the persuasiveness of Dr. Livesay and Dr. Michiel's opinions as to limitations on her ability to work due to mental health limitations. Moreover, even assuming that the ALJ erred in relying on this reason, as discussed herein the ALJ properly considered the supportability and consistency factors as required under the new regulations when considering the mental health opinions. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

opinion, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(1); 416.920c(c)(1) (emphasis added). Here, the ALJ reasonably found that Dr. Michiel failed to provide support for the opined limitation in carrying out complex instructions, *aside* from the single mental health diagnosis of adjustment disorder. (*See* Doc. No. 16 at 15) ("A diagnosis is not equivalent to 'objective medical evidence,' which 'means signs, laboratory findings, or both.").

Moreover, the housekeeping position has a DOT reasoning level of one, which requires a "commonsense understanding to carry out simple one-or two-step instructions. [And deal] with standardized situations with occasional or no variables in or from these situations encountered on the job." *See* DOT 323.687-014, *available at* 1991 WL 672783. Thus, even assuming, arguendo, that the ALJ erred in considering Dr. Michiel's opinion that Plaintiff was limited in carrying out complex instructions, any error would be harmless because Plaintiff's past relevant work of housekeeper is consistent with the mental limitations assessed by Dr. Michiel. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006) (reviewing court cannot consider an error harmless unless it "can confidently conclude that no reasonable ALJ, when fully crediting the [evidence], could have reached a different disability determination.").

## VIII.   CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ properly considered the medical opinion evidence and properly assessed the RFC. After review, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, it is **ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 13) is DENIED.
2. Defendant's Cross-Motion for Summary Judgment (Doc. No. 16) is GRANTED and the decision of the Commissioner of Social Security is AFFIRMED for the reasons set forth above.

3. The Clerk is directed to enter judgment in favor of the Commissioner of Social Security, terminate any pending motions/deadlines, and close this case.

Dated:     February 29, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE